# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SHEGOG, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 1722 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| OFFICER RIVERS and | ) | |
| DR. KHAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendants pursuant to 42 U.S.C. § 1983 for their alleged violations of his constitutional rights. The case is before the Court on defendants' Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment. For the reasons set forth below, the Court grants the motion.

## Facts

At the times relevant to this suit, plaintiff was a pre-trial detainee at Cook County Jail, defendant Rivers was a correctional officer at the Jail, and defendant Khan was a doctor at Cermak hospital, which provides health care services to inmates at the Jail. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 1-3.)

On June 5, 2013, plaintiff entered the Jail, and on July 14, 2013, a doctor gave him a bottom bunk permit. (*Id.* ¶¶ 4, 13.) However, plaintiff did not immediately receive a bottom bunk, despite his repeated requests for one to Rivers and another correctional officer, because none was available. (*Id.* ¶¶ 15, 18, 22, 24.) However, he was allowed to put his mattress on the floor and sleep there without being disciplined for doing so. (*Id.* ¶ 16.)

On July 23, 2013, plaintiff's leg went numb while he was climbing to the top bunk and he fell backwards, hitting his head on the metal toilet and his back and neck on the concrete floor. (*Id.* ¶ 32.) At 7:30 a.m. that day, plaintiff told a non-party correctional officer and a medical technician about his fall. (*Id.* ¶¶ 35, 37.) They gave him Ibuprofen and a cold pack for a bump on his head. (*Id.* ¶ 38.)

On July 24, 2013, plaintiff completed a health service request slip, and on August 5, 2013, was examined by a doctor. (*Id.* ¶¶ 44-45; Defs.' Ex. C, Medical Records at Shegog 401.) The doctor gave him Ibuprofen for pain, and "encouraged [plaintiff] to take pain meds as ordered." (Defs.' Ex. C, Medical Records at Shegog 343.)

On September 7, 2013, plaintiff was examined by a nurse, whom he told: " I fell from top bunk 2 mths ago and the Dr saw me and gave me some ibuprofen, now I don't have any more and I need an Xray." (*Id.* at Shegog 352.) The nurse noted: "Ambulates with Cane. No swelling/erythema noted to back. Denies any new injuries. Tab tylenol 2 given per protocol for pain relief." (*Id.*)

On September 27, 2013, plaintiff went to Cermak to see defendant Khan. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 49.) Plaintiff was sitting on a bench in the waiting room when Khan told plaintiff to follow him. (*Id.* ¶ 51.) Plaintiff told Khan he could not walk because of back pain, to which Kahn allegedly responded: "All you black people do is complain. If you want medical treatment, stay out of jail." (*Id.* ¶¶ 52-53.) Khan then left the waiting room, but he sent a nurse back out to give plaintiff some pain medication. (*Id.* ¶¶ 56, 58.)

On October 1, 2013, plaintiff was examined by a doctor, whose records provide:

> Stat[ed] that he fell last week and hurt his lower back and claims he "blacked out" earlier today in court. Now he is c/o of mild HA mostly in back of head that started shortly after the black out in court and feels "unsteady." Denies ringing in ears or blurred vision. Denies head trauma . . . . Also, states that he sustained right thigh laceration about 2 yrs ago and feels that is the reason for his unsteadiness and falls sometimes, esp. when he walks because of intermittent numbness in the inner right thigh. . . .

(Defs.' Ex. C, Medical Records at Shegog 402.) The doctor said the "exams [were] unremarkable" but ordered a CT scan of plaintiff's head and a lumbar spine x-ray and gave him pain medication. (*Id.* at Shegog 404.) The CT scan and x-ray findings were both "unremarkable." (*Id.* at Shegog 408.)

On October 28, 2013, plaintiff was given a bottom bunk, and he has had one ever since. (Defs.' Ex. A, Pl.'s Dep. at 127.)

## **Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Plaintiff alleges that defendants violated his Eighth Amendment rights by failing to give him a bottom bunk in July when he received a permit to have one. That is true only if defendants' failure to give plaintiff a bottom bunk constituted deliberate indifference to one of his objectively serious

medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (per curiam) (quotations omitted). A defendant acted with deliberate indifference if "[he] was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety." *Id.*

Defendants do not dispute, and thus the Court assumes, that plaintiff has a serious medical need for a lower bunk. However, the record does not suggest that defendants were deliberately indifferent to that need. There is no evidence that plaintiff told Khan or Khan otherwise knew that plaintiff did not have a lower bunk. Moreover, it is undisputed that Rivers did not give plaintiff a lower bunk because he did not "[have] one to give" and allowed plaintiff to sleep on the floor without disciplining him for doing so. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 16, 18.) In short, the record does not suggest that defendants both knew that plaintiff did not have a bottom bunk and disregarded the risk that its absence posed to him. Accordingly, defendants are entitled to judgment on this claim.

Plaintiff also alleges that defendants were deliberately indifferent to his need for medical attention after he fell from the top bunk. Defendants contend there is no evidence that the fall caused plaintiff to suffer a serious medical condition. The Court agrees. Though the fall gave plaintiff a bump on the head and back and neck pain, his injuries were treated with a cold pack and pain relievers, and the CT scan of his head and x-ray of his back were "unremarkable." (*Id.* ¶ 38; *see* Defs.' Ex. C, Medical Records at Shegog 343, 352, 401, 402, 404, 408.) These injuries, though

4

no doubt uncomfortable for plaintiff, are not objectively serious medical needs. *See Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (stating that "[not] every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim"); *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) ("A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution.").

Even if plaintiff's injuries constituted an objectively serious medical need, the record does not suggest that defendants were deliberately indifferent to it. There is no evidence that Rivers even knew about plaintiff's fall let alone refused to obtain medical treatment for him. And Khan, despite making an alleged racial slur, gave plaintiff the same treatment – pain medication – that every other medical provider had given him. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 58.) Thus, the record does not create a triable fact issue as to deliberate indifference.

Plaintiff fares no better with his equal protection claim. Viewed favorably to him, the record suggests that Khan had racial animus. (*See id.* ¶ 53.) But it also shows that Khan gave plaintiff pain medication, precisely the same treatment he received from every other medical provider. Thus, though Khan's alleged statement is reprehensible, it does not create a triable fact issue as whether plaintiff's equal protection rights were violated. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution. . . . "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") (footnote omitted).

5

**Conclusion**

For the reasons set forth above, there is no genuine issue of material fact as to plaintiff's claims against defendants, who are entitled to judgment as a matter of law. Accordingly, the Court grants defendants' motion for summary judgment [59] and terminates this case.

**SO ORDERED.**                                   **ENTERED: December 11, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**